UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY LEE RAY, #187595,

      Petitioner,                     Case No. 08-cv-11415

v.                             HONORABLE STEPHEN J. MURPHY, III

HUGH WOLFENBARGER,

      Respondent.
_____/

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS**

      Pro se petitioner Randy Lee Ray has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Ray challenges his conviction and sentence for armed robbery on the ground that he was denied the effective assistance of trial counsel. Because the state court's adjudication of Ray's ineffective assistance of counsel claim was not based on an unreasonable application of clearly established federal law, the Court will deny the petition.  The Court will, however, issue a certificate of appealability.

**FACTUAL BACKGROUND**

      Ray was charged with armed robbery of a bank in Frenchtown Township, Michigan on August 11, 2005.  He was tried before a Monroe County Circuit Court jury on January 9, 2006.  The evidence at trial established that Ray entered the bank around 9:00 a.m., waited for a customer to leave, approached the head teller and gave her a note that stated, "All your money or I'll shoot you."  The teller thought she saw Ray pointing "something round and silver" at her; she assumed that it was a gun because of the note and the way he was holding the object.  She felt threatened and handed all the money in her top bank drawer to Ray, who scooped up the money, turned, and ran out the door.

Ray hurried to his car and left the area.  A private citizen observed Ray, followed his vehicle, and called the police, who later chased Ray in a patrol car.  Ray crashed the car and fled on foot.  The police found him hiding behind a shrub.  The police recovered all the stolen bank money and took Ray back to the bank where bank employees identified him as the robber.  Ray later admitted to a detective that he was responsible for the robbery and that he had handed a demand note to a teller.  No gun was found on Ray or in his car.

Two tellers identified Ray at trial as the robber.  Ray did not testify or present any witnesses, and he did not dispute that he robbed the bank or that he presented a demand note to the teller.  His defense was that the prosecution charged him with the wrong crime (armed robbery instead of unarmed robbery), and that he was not armed with a weapon or with an object fashioned as a weapon when he committed the robbery.

On January 9, 2006, after a one-day trial, the jury found Ray guilty of armed robbery, Mich. Comp. Laws § 750.529.  The trial court sentenced him as a habitual offender, fourth offense, to imprisonment for twenty-five to fifty years.  The Michigan Court of Appeals affirmed Ray's conviction in a brief, per curiam opinion, *see People v. Ray*, No. 268602, 2007 WL 914527 (Mich. Ct. App. Mar. 27, 2007), and the Michigan Supreme Court denied leave to appeal.  *See People v. Ray*, 480 Mich. 857 (2007).

The instant petition followed.  Ray claims he was deprived of effective assistance of trial counsel because his attorney structured his defense on an outdated version of the statute.  The warden argues that it was not unreasonable for the state court to conclude that Ray was not prejudiced by his attorney's ineffectiveness.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner is not entitled to the writ of habeas corpus unless he can show that the state

court's adjudication of his claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (noting that even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination.").

The Supreme Court recently explained when an adjudication is "unreasonable":

Under § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

. . . .

[Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (citations omitted). Though the standard is demanding, it is not impossible. "Deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The parties do not clearly identify which provision of § 2254(d) provides the appropriate framework here. Ray's reply brief contends that the Michigan Court of Appeals unreasonably applied *Strickland*, but also argues that its factual determinations were unreasonable. Reply Br. 16-17. Likewise, the warden's answer shifts back and forth between the two. *See* Answer, 12-14. The sole question at issue is whether Ray was prejudiced from his counsel's advice. Since Ray rejected a plea offer, the central inquiry for the state court was whether it is reasonably likely that Ray would have accepted the prosecutor's offer had he been properly advised. This question is a mixed one of law and fact, *see Strickland v. Washington*, 466 U.S. 668, 698 (1984), and therefore best analyzed under the "unreasonable application" provision of § 2254(d)(1). *See, e.g.*, *Jermyn v. Horn*, 266 F.3d 257, 305-06 & n.24 (3d Cir. 2001) (affirming grant of relief on *Strickland* claim, but finding district court erred in analyzing prejudice prong under § 2254(d)(2) rather than

4

"unreasonable application" provision of § 2254(d)(1)).  But if the ultimate issue is more properly characterized as a question of fact, such that § 2254(d)(2) provides the more appropriate framework, it really makes no difference in the outcome because, for the same reasons identified in the § 2254(d)(1) analysis below, the state court's determination of the facts was not unreasonable.  *See Ward v. Sternes*, 334 F.3d 696, 703 (7th Cir. 2003) ("In a post-AEDPA world, however, where state court adjudications on the merits of petitioner's challenges are entitled to deference regardless of whether we classify them as questions of fact, law, or mixed, the outset classification is of diminished importance.").

### DISCUSSION

Ray claims he was denied the effective assistance of trial counsel because his attorney failed to properly research the armed robbery statute and based the entire defense on an outdated version of the statute.  As a result of this faulty research, Ray's attorney advised him he could beat the charge of armed robbery because the prosecution would be unable to prove its case.

The Michigan Court of Appeals adjudicated Ray's claim on the merits.  It agreed that counsel's trial strategy was unreasonable and satisfied the first of the two prongs of an ineffective assistance claim.  It nevertheless rejected Ray's claim after concluding that Ray was not prejudiced by his attorney's deficiency.  Specifically, it concluded that although there was evidence of a possible plea offer by the prosecutor, "it was clear from the record that defendant would not have accepted that offer."  *Ray*, 2007 WL 914527, *1.  For the reasons that follow, this decision did not involve an unreasonable application of Supreme Court precedent.

A. Clearly Established Law

The Sixth Amendment to the U.S. Constitution provides: "In all criminal prosecutions,

5

the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."
U.S. Const. amend. VI.  This specific right protects the more general and fundamental right
to a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 684 (1984).  The Constitution defines
the basic elements of the fair trial guaranteed by the Due Process Clauses largely through
the Sixth Amendment.  *Id*. at 684-85.  The right to counsel plays a "crucial role" in ensuring
a fair trial because of the adversarial nature of our justice system.  *Id*. at 685.  Accordingly,
the right to counsel includes not only the right to the presence at trial of "a person who
happens to be a lawyer," but also "'the right to the effective assistance of counsel.'"  *Id*. at
685-86 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970)).  The right to
counsel applies at the pretrial phase, when a defendant considers whether to plead guilty.
*Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

A claim that counsel was constitutionally ineffective has two components.
*Strickland*, 466 U.S. at 687.  First, the defendant must show that counsel's performance
was "deficient," meaning that "counsel made errors so serious that counsel was not
functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*.
Second, the defendant must show that the deficient performance prejudiced the defense,
meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable."  *Id*.  "[B]ecause the *Strickland* standard is a general
standard," for purposes of federal habeas review, a state court has wide latitude to
reasonably determine that a defendant has not satisfied the standard.  *Knowles v.
Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

To establish prejudice, the petitioner must "affirmatively prove" that his attorney's
errors at trial "actually had an adverse effect on the defense."  *Strickland*, 466 U.S. at 693.
He must show more than that "the errors had some conceivable effect on the outcome of

6

the proceeding," but less than "that counsel's deficient conduct more likely than not altered the outcome of the case." *Id.* Instead, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* framework applies to advice regarding whether to plead guilty. *Padilla*, 130 S. Ct. at 1480-81; *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Magana v. Hofbauer*, 263 F.3d 542, 548 (6th Cir. 2001) ("Following *Lockhart*, we have held that a petitioner who claims that his counsel was ineffective for encouraging him to reject a plea bargain and go to trial states a viable Sixth Amendment claim." (citing *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir. 1988)). The analysis of the performance prong is the same, but instead of focusing on the fairness of the trial, the prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. When a petitioner rejects a plea offer on the basis of allegedly deficient advice, the petitioner must show that "but for his counsel's advice, there is a reasonable probability that he would have pleaded guilty." *Magana*, 263 F.3d at 547; *see also Cooper v. Lafler*, 376 F. App'x 563, 572 (6th Cir. 2010), *cert. granted*, 131 S. Ct. 856 (Jan. 7, 2011) (No. 10-209) (recognizing that "[n]o federal circuit case . . . holds" that there can be no prejudice from deficient advice at plea stage so long as petitioner received otherwise fair trial).[1] The Sixth Circuit has noted that the burden of establishing prejudice

---

[1] The Supreme Court granted certiorari in *Cooper* on the question of whether a state habeas petitioner is entitled to relief where his counsel deficiently advises him to reject a favorable plea bargain but the defendant is later convicted and sentenced pursuant to a fair trial. 131 S. Ct. 856 (2011); *see also Missouri v. Frye*, 131 S. Ct. 856 (2011) (granting certiorari to Court of Appeals of Missouri on same question). Because the issue in *Cooper* arises in the context of a § 2254 petition, the Court will also likely resolve whether the right

7

in the plea context is lighter than in the trial context. *See Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) ("It is therefore easier to show prejudice in the guilty plea context because the claimant need only show a reasonable probability that he would have pleaded differently.").

B. Analysis

With the above principles in mind, the Court addresses Ray's claim that the Michigan Court of Appeals's adjudication of his claim was unreasonable.[2]

1. Deficient Performance

Ray's attorney argued at trial that Ray was not guilty of armed robbery because he was not armed with a weapon or with an article fashioned as a weapon. This view of the law informed counsel's pretrial advice to Ray. The problem with this argument is that, as of July 1, 2004, a person can be found guilty of armed robbery even if the person is not armed with a dangerous weapon or with an article used or fashioned as a weapon. It is enough that the defendant "represents orally or otherwise that he or she is in possession of a dangerous weapon." Mich. Comp. Laws § 750.529.[3] Ray's note suggested he had a

---

to relief, if one exists, has been "clearly established" for purposes of AEDPA. *See* Sup. Ct. R. 14.1(a). In the absence of Supreme Court precedent stating otherwise, this Court is bound by the Sixth Circuit's holdings that Supreme Court precedent clearly establishes that prejudice can be established by showing a petitioner was deprived of a plea offer he would have accepted. *See Magana*, 263 F.3d at 547 ("Following *Lockhart*, we have held that a petitioner who claims that his counsel was ineffective for encouraging him to reject a plea bargain and go to trial states a viable Sixth Amendment claim." (citing *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir. 1988)).

[2] When applying AEDPA deference, a federal court reviews the decision of the last state court to issue a reasoned opinion on the claims at issue. *See Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006). The relevant decision here is that of the Michigan Court of Appeals.

[3] Prior to the change in law, the prosecutor had to prove, through objective evidence, that a dangerous weapon, or object reasonably believed to be a dangerous weapon, was used during the robbery. *See People v. Banks*, 454 Mich. 469, 480-81 (1997); *People v.*

gun.

Counsel apparently failed to conduct the most basic legal research prior to trial. In fact, he had to be informed by the prosecutor at trial, *after* the government finished its proofs and Ray moved for a directed verdict, that the armed robbery statute had been amended to cover a person who, like Ray, "represents orally *or otherwise* that he or she is in possession of a dangerous weapon" while engaging in a robbery. 2004 Mich. Pub. Acts 128 (codified at Mich. Comp. Laws § 750.529) (emphasis added); *see also* Trial Tr. 197-99. Since counsel first learned of the change in law at trial, any advice he previously provided Ray during the plea bargaining process was tainted by counsel's lack of understanding of the armed robbery statute. This constitutes deficient performance. *See Cooper*, 376 F. App'x at 570-71 ("Thus it is clear that counsel informed petitioner of an incorrect legal rule.

Further, counsel focused on that incorrect legal rule in advising petitioner not to accept the state's plea offer. Providing such erroneous advice in the face of settled Michigan law is obviously deficient performance."), *see, e.g.*, *id.* (concluding that counsel's advice that petitioner could not be convicted of assault with intent to commit murder because bullets entered victim's body below waist constituted deficient performance given well-settled status of law, and state court's conclusion to the contrary was unreasonable). The Michigan Court of Appeals agreed. *Ray*, 2007 WL 914527, at *1 ("We agree that it was not a reasonable trial strategy to defend a 2005 armed robbery charge on the ground that the prosecutor could not prove the elements of the offense as they existed before July 1, 2004.").

---

*Jolly*, 442 Mich. 458, 469 (1993).

9

2. Prejudice

The state court denied relief on grounds that Ray failed to establish prejudice from his counsel's deficient advice. Ray had the burden to "affirmatively prove" a reasonable probability that, but for counsel's advice, he would have pleaded guilty and avoided trial. The Court's duty, then, is to determine whether "fairminded jurists could disagree" with the state court's conclusion that Ray failed to show a reasonable probability that he would have pleaded guilty but for the poor advice. *Harrington*, 131 S. Ct. at 786.

Addressing Ray's claim of prejudice, the state court found it "clear from the record" that Ray would not have accepted the plea offered by the prosecutor. It relied almost entirely on a portion of a letter submitted by Ray to the trial court, dated November 18, 2005, during the plea negotiations. As quoted in the court's decision,[4] the letter stated:

> Now here is what I think should happen to me. Lower my charge to unarmed robbery or larceny of a person. [D]on't give me the 12 to 26 years the prosecutor, John T. Marunick offer[ed] me. Yes, I should be punish[ed]. [B]ut give me 3, 4, or 5 year (min) . . . ."

2007 WL 914527, at *1 (quoting letter of Nov. 18, 2005) (alternations in state court opinion).

The court of appeals found that while the letter constituted "some evidence" of a plea offer, it was clear that Ray would not have accepted it. The court also considered the fact that defense counsel sought to continue plea negotiations, and, at a pretrial conference, requested a two-week continuance for the final pretrial conference to try and work out a deal with the prosecutor. *Id.* The court concluded from the letter and the pretrial proceedings that absent any additional evidence in the record to show that a more favorable plea was offered that Ray would have accepted, Ray failed to demonstrate that he was prejudiced by counsel's performance. *Id.*

---

[4] The letter itself was not included in the Rule 5 materials.

10

The state court's resolution of the prejudice prong did not involve an unreasonable application of *Strickland* and *Hill*,[5] even if the application was wrong in this Court's view. The state court acknowledged the existence of a plea offer that included a sentence agreement,[6] but concluded that Ray would not have accepted it. Ray's letter to the trial judge was the primary basis for this conclusion. The state court found that the letter was evidence of Ray's obstinance to accepting the prosecutor's offer. When considering the letter, however, the state court did not acknowledge the obvious fact that the letter was

_____

[5] Although not the focus of the Court's inquiry, it appears that the state court may have acted "contrary to" Supreme Court precedent by applying a higher standard than *Strickland* requires. 28 U.S.C. § 2254(d)(1). To demonstrate prejudice, a defendant need only show a "reasonable probability" that but for his attorney's errors, resolution of the case would have been different. *Strickland*, 466 U.S. at 694. This is less than a showing that counsel's deficient conduct more likely than not altered the outcome. *Id.* at 693. The state court here may have applied a more-likely-than-not standard, when it concluded that "there is nothing else in the record to show that a more advantageous offer was made that defendant *would have accepted* and thus defendant has not shown that he was prejudiced." *Ray*, 2007 WL 914527, at *2 (emphasis added). By requiring Ray to demonstrate that he *would have* pleaded guilty, rather than a *reasonable probability* that he would have pleaded guilty, the court may have held Ray to a higher standard than *Strickland* requires. *See, e.g.*, *Magana*, 263 F.3d at 550 (finding state court decision was contrary to Supreme Court precedent where, by requiring a showing that "the defendant would not have accepted the offer," the state court thereby required petitioner to "demonstrate, not just a 'reasonable probability,' but an absolute certainty that the outcome of the proceedings would be different."). But because the state court earlier in its opinion articulated the correct standard of "reasonable probability" – albeit in the context of finding that the result *of the trial itself* would not have been different, which is not the relevant question here – it is difficult to tell whether the state court applied a higher standard to the relevant question as well, or simply made a slip of the pen by omitting the words "reasonable probability" in its analysis of the relevant question. Given the deference owed state court decisions under AEDPA, the Court resolves the ambiguity in the state court's opinion in the warden's favor.

[6] There is no dispute that the prosecutor offered Ray 12 to 26 years. While the court of appeals considered Ray's letter as merely "some evidence" of an offer with a sentence agreement, it did not deny relief based on a lack of any plea offer. It denied relief because it found Ray would not have accepted the offer. Moreover, the prosecutor never disputed on appeal that he offered Ray a plea bargain, only that Ray could not demonstrate prejudice by showing he missed out on the offer. State's Br. on Appeal (docket no. 11-10, 24). The warden also concedes in his answer here that the prosecutor offered Ray at 12-year minimum sentence. Answer, 14 (docket no. 10).

written while Ray was under the mistaken impression (created by counsel) that the prosecutor could not prove armed robbery because he could not prove that Ray used a dangerous weapon.  The letter was written on November 18, 2005.  Ray's counsel labored under an incorrect understanding of the armed robbery statute up to the time the trial court denied Ray's motion for a directed verdict, on January 9, 2006.

The better inference to draw from the letter is that Ray was willing to plead guilty. Ray states in the letter, "Yes, I should be punish[ed].  [B]ut give me 3, 4, or 5 year (min) . . . ."  The only problem with the offer, in Ray's view, was the recommended sentence of 12 to 26 years.  Ray believed, as a result of counsel's advice, that he had been charged with a crime the prosecution could not prove Ray committed.  He thought unarmed robbery or larceny would be more appropriate given that the prosecutor could prove these charges without proving Ray used a weapon.  Ray's rejection of the offer in no way forecloses a finding that it was reasonably likely that he would have accepted the offer had he received correct advice.

The Sixth Circuit's analysis in *Cooper v. Lafler* is instructive.  In finding that the state court unreasonably concluded that petitioner was not prejudiced by his attorney's incorrect advice about the law,[7] the panel considered, among other things, a letter written by Cooper indicating his desire to plead guilty to a lesser charge.  376 F. App'x at 572.  The warden argued that the letter clearly demonstrated that Cooper would not have accepted the prosecutor's offer.  Rejecting this argument, the court found that "[p]etitioner's hope for a still more favorable plea deal (and an attempt to negotiate one) does not mean he would

---

[7] Cooper's attorney advised that he could not be convicted of assault with intent to commit murder because the bullets entered the victim's body below the waist.  376 F. App'x at 570.  This was poor advice, and the court found counsel constitutionally deficient in rendering the advice.

never accept a higher offer.  To the contrary, his interest in negotiating a plea shows that he was not set on going to trial." *Id.*  So too, Ray's letter to the state trial court indicates a receptivity to pleading guilty and avoiding trial, not that he never would have accepted the prosecutor's offer.  Nevertheless, because the letter also permits a reasonable inference that Ray would not have accepted any offer unless it was significantly lower than the 12 to 26 offered by the prosecutor, the state court's decision to draw the opposite inference was not unreasonable.

The state court also considered the course of pretrial proceedings in determining whether Ray suffered prejudice from counsel's advice.  At a pretrial conference on November 4, 2005, Ray's counsel told the trial court that he had engaged in extensive plea negotiations with the prosecutor.  The prosecutor never denied that negotiations had taken place.  At the final pretrial conference on December 9, 2005, Ray's counsel told the court that plea negotiations were ongoing and asked for a two-week continuance to try and work out a deal.  Again, the prosecutor never disputed that negotiations had taken place and never opposed the continuance request.  These pretrial proceedings persuaded the state court that Ray was not reasonably likely to accept any offer unless it contained a significantly lower minimum sentence.  Again, the better inference to draw from the course of proceedings is that Ray was actually quite close to pleading guilty and likely would have accepted the prosecutor's offer had he received proper legal advice.  If Ray's resolve to stand trial was clear and unshakable, counsel likely would not have continued to engage in "extensive" plea negotiations and later requested yet another continuance.  And if the trial court thought further negotiations would have been a waste of time, it could have denied the request.  If Ray was at least close to pleading guilty even to a charge his attorney convinced him he could beat, there is certainly a reasonable probability that he

13

would have pleaded guilty had he known that the prosecutor had only to show that Ray "represented orally or otherwise that he . . . [was] in possession of a dangerous weapon," an element Ray knew the prosecutor could prove given the evidence.

Nevertheless, as with Ray's letter, it is also possible to infer from the course of the pretrial proceedings that Ray was unwilling to accept any offer unless it included a sentence agreement significantly lower than the one offered by the prosecutor, and that the purpose of the continued negotiations and continuance requests were to try and get the prosecutor to come down from the offer of 12 to 26 years, not to persuade Ray to come up to the prosecutor's offer. Therefore, the state court's decision to draw this inference was not unreasonable.

The state court's discussion of prejudice is terse. It did not consider or discuss additional relevant indicia of prejudice present in Ray's claim. For example, the absence of any protestations of innocence by Ray supports a finding of prejudice. *See Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) ("Protestations of innocence throughout trial are properly a factor in the trial court's analysis."). Ray's letter to the trial court indicated "*Yes, I should be punish[ed].* [B]ut give me 3, 4, 5 year (min) . . . ." (emphasis added). Ray admitted his conduct amounted to unarmed robbery or larceny because he did not use a dangerous weapon. Again, this understanding was based on his attorney's incorrect advice. Given that Ray admitted committing each element of the crime, it is difficult to conclude that had he known that his admissions could establish armed robbery, he would have continued to reject the prosecutor's offer. Where a petitioner presses his innocence even after trial, courts generally find little likelihood that the petitioner would have pleaded guilty if given constitutionally adequate advice. *See, e.g.*, *Welch v. United States*, 370 F. App'x 739, 743 (7th Cir. 2010) ("We note, however, that even now Welch continues

14

to insist that he is innocent, which makes it difficult to believe his assertion that he would have accepted a plead deal if [counsel] had negotiated one."); *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005) ("Humphress's assertions of his innocence at trial and during the magistrate's evidentiary hearing lend additional support to the district court's conclusion that Humphress would not have pled guilty."); *Moss v. United States*, 323 F.3d 445, 475 (6th Cir. 2003) (rejecting ineffective assistance claim in part because defendant had maintained innocence and made clear he would not plead guilty under any circumstances); *see also Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (indicating that protestations of innocence, though relevant, are not "dispositive on the question of whether [a defendant] would have accepted [a] plea offer."). The converse is also relevant to the analysis.

Also, the substantial weight of the evidence of guilt is another indicator of prejudice the state court did not consider. There was the teller's testimony that she saw a round silver thing in Ray's pocket and read the note Ray presented – "All your money or I'll shoot you." There was also Ray's statement to the police that he wrote the note and passed it to the teller. Ray had no viable defense, and therefore had every reason to accept an offer with a sentence agreement and avoid trial. That is why when Ray's counsel, when confronted with the realization that the armed robbery statute had been amended, had no choice but to continue to rely on abrogated case law.[8] *See* Trial. Tr. 198. And it is also

---

[8] The following exchange took place on the record after Ray moved for a directed verdict:

Prosecutor:  [For the above reasons,] [i]t's our position that a prima facie case of armed robbery has been made out under the current statute.
Court:  Rebuttal?
Counsel:  Are you – were you citing the Parker case?
Prosecutor:  No.

15

why counsel had no choice but to mischaracterize the law in his closing arguments by arguing that the prosecutor had charged Ray with the wrong crime. *See id.* at 224-25. The state court recognized the strength of the case, but did not consider the effect on the probability that Ray would have accepted the prosecutor's offer.

Nevertheless, the state court's failure to consider these additional indicators was not unreasonable. Ray's appellate counsel never included in his brief on appeal any argument regarding Ray's acknowledgment of culpability and the substantial weight of the evidence. In fact, the briefing on appeal (in both the court of appeals and supreme court) focused almost exclusively on the performance prong and contained nearly no discussion of prejudice. The sole claim of prejudice made in the briefs was that Ray was unable to make an informed decision whether to proceed to trial. Not once did appellate counsel affirmatively declare in the brief that there was a reasonable probability that Ray would have accepted the offer had Ray received proper advice. Ray also filed pro se supplemental briefs in both the court of appeals and the supreme court. But like the briefs

---

Counsel: What cases were you citing?
Prosecutor: I didn't cite any case.
Counsel: Oh.
Prosecutor: The statute's been changed since those cases.
Counsel: All right, well, in the case of <u>People</u> v. <u>Parker</u>, 417 Michigan Reports 556, an '83 case . . . .
Court: Are any of your decisions dated later than July 1, 2004?
Counsel: What was the date, sir?
Court: July 1, 2004.
Counsel: No.
Court: Okay.
. . .

Court: And in this case, the evidence is overwhelming. The only thing we're missing here is an actual reenactment of the offense.

Trial Tr. 198-201.

prepared by counsel, Ray's briefs focused solely on the performance prong and contained little to no discussion of prejudice. Prejudice may be presumed when counsel labors under an actual conflict of interest. *Strickland*, 466 U.S. at 692. In the absence of a conflict of interest, however, the defendant has the burden to "affirmatively prove" prejudice. *Id.* at 693. It was not the state court's duty to create arguments and then evaluate their persuasiveness. And it cannot be said that a state court acts unreasonably in failing to consider arguments never raised or evidence never presented.

Finally, Ray's failure to support his claim with direct evidence of prejudice severely undercuts his claim on habeas review and supports the conclusion that the state court did not act unreasonably in denying his claim. Direct evidence, such as a petitioner's testimony that he would have accepted an earlier-rejected offer but for the constitutionally deficient advice, goes a long way in establishing prejudice. In fact, the Sixth Circuit has indicated that the petitioner's testimony may be sufficient by itself to establish prejudice, though it is unclear whether it has ever relied solely on testimony in finding prejudice. *See Magana*, 263 F.3d at 547 n.1 & 551-52; *Cooper*, 376 F. App'x at 572-73 ("There is no legal basis for us to impose a requirement that habeas petitioners provide . . . evidence [in addition to their testimony], and we have declined to create this rule in the past. To do so would contradict the Supreme Court's holdings that petitioner need only establish a 'reasonable probability' that the result would have been different."(citations omitted)).

Ray submitted no such evidence on appeal. But he could have. In Michigan, courts of appeals can remand matters to the trial courts for the purpose of conducting an evidentiary hearing on claim of ineffective assistance. *People v. Ginther*, 390 Mich. 436 (1973). The state court declined to remand Ray's case for an evidentiary hearing, in which direct evidence of prejudice could have been discovered, after concluding that he failed to

demonstrate facts that a hearing would unearth that would show prejudice.  Ray attempts to remedy his failure in the state proceedings by submitting an affidavit and requesting an evidentiary hearing in these proceedings.[9]  But the state court did not have the affidavit before it when considered Ray's claim of prejudice.  Considering the lack of any direct evidence of prejudice and the inferences one could draw from the letter and the course of pretrial proceedings, the Court cannot say that the state court's application of *Strickland* and *Hill* here fell outside the range of applications fairminded jurists could make in this case.  It was not unreasonable for the state court to conclude, based on the evidence and arguments actually put forth by Ray and his counsel, that Ray failed to carry his burden to "affirmatively prove" prejudice from his counsel's deficient advice.

    C.  Evidentiary Hearing

    This case likely would have turned out differently had Ray diligently sought to develop the factual basis of his claim in the state court proceedings.  Had Ray filed his affidavit in the state proceedings, the court of appeals may have been persuaded to remand his case for an evidentiary hearing on the issue of prejudice.  Had remand still been denied, Ray likely would have been entitled to an evidentiary hearing in this Court.  And new evidence proffered at that hearing that substantially supported his claim would have been considered by this Court without the deference to state court decisions that AEDPA otherwise requires.  *See Lovell v. Duffey*, 629 F.3d 587, 597-98 (6th Cir. 2011).

---

    [9] Ray's affidavit, attached to his reply brief, states: "Had Mr. Garrett advised me that the prosecution could satisfy the elements of armed robbery based on the note, even though I did not have a weapon, I would have accepted the prosecution's 12 to 25 years offer and pled guilty."  Ray Aff. ¶ 11 (docket no. 13).  And: "If Mr. Garrett had informed me that he was wrong about the elements of armed robbery and that I should have been charged with unarmed robbery, I would have insisted that the trial judge appoint me substitute counsel and allow me to accept the prosecution's plea offer of 12 to 25 years."  *Id.* ¶ 14.

But because Ray did not submit his affidavit or take other steps to develop the factual basis for his claims in the state court proceedings, for the reasons that follow, he is barred from receiving an evidentiary hearing in federal court to develop his claim of prejudice.

Section 2254(e)(2) prohibits evidentiary hearings in federal habeas proceedings when a petitioner "has failed to develop the factual basis of a claim in State court proceedings."[10]   A failure to develop the factual basis requires a lack of diligence, or some greater fault, on the part of the petitioner or his counsel.  *See Michael Williams v. Taylor*, 529 U.S. 420, 432 (2000).   Diligence "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court."  *Id.* at 435.  It requires that the petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. Relevant, then, are Michigan's requirements for an evidentiary hearing.

To obtain an evidentiary hearing on an ineffective assistance claim in Michigan, a defendant must file a motion for a new trial at the trial level or a motion to remand if the matter is already on appeal.  *See Ginther*, 390 Mich. at 443-44; Mich. Ct. R. 7.211(C)(1)(a). A remand motion must be supported by an affidavit or offer of proof regarding the facts to be established at a hearing.  Mich. Ct. R. 7.211(C)(1)(a).  Ray did not file a motion for new trial in the trial court.   And while he did request in his pro se supplemental brief that the appellate court remand to the trial court for an evidentiary hearing, the request was procedurally improper because it was not made in a separate motion, and, more importantly, was unsupported by an affidavit or offer of proof regarding the facts to be established at a hearing.   Despite Ray's cursory request for an evidentiary hearing at the

---

[10] Exceptions exist, but none apply here.

19

tail end of his brief, he did not request a hearing in the manner prescribed by state law, and is therefore barred from obtaining one in federal court. *See, e.g.*, *Washington v. Renico*, 455 F.3d 722, 731 n.4 (6th Cir. 2006) (finding petitioner not barred by § 2254(e)(2) from receiving evidentiary hearing in federal court where he filed proper motion to remand in state appellate court); *Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (finding petitioner barred from receiving evidentiary hearing in federal court because he failed to request hearing in state court proceedings in specific manner prescribed by Missouri law); *Strayhorn v. Booker*, 718 F. Supp. 2d 846, 871 n.3 (E.D. Mich. 2010) (denying request for evidentiary hearing under § 2254(e)(2)); *Ware v. Harry*, 636 F. Supp. 2d 574, 593 (E.D. Mich. 2008) (granting hearing).

Because Ray is barred from conducting an evidentiary hearing, he is also barred from otherwise expanding the record in federal court through documentary evidence such as his affidavit. *See Holland v. Jackson*, 542 U.S. 649, 652-53 (2004) (per curiam) ("[Restrictions imposed by § 2254(e)(2)] apply *a fortiori* when a prisoner seeks relief based on new evidence *without* an evidentiary hearing."); *Landrum v. Mitchell*, 625 F.3d 905, 923-24 (6th Cir. 2010) (affirming district court's denial of motion to expand the record to include affidavit not submitted in state proceedings, because petitioner failed to develop factual basis in state proceedings); *see also Cargle v. Mullin*, 317 F.3d 1196, 1209 (10th Cir. 2003) ("While § 2254(e)(2) refers only to evidentiary hearings, it governs as well when expansion of the record is used to achieve the same end as an evidentiary hearing." (alterations and internal quotation marks omitted)).

\* \* \* \* \*

After careful review, the Court concludes that the decision of the Michigan Court of Appeals denying Ray's claim of ineffective assistance of trial counsel did not involve an

unreasonable application of *Strickland* and *Hill*.  Given the lack of any direct evidence of prejudice and the permissible inferences one could draw from Ray's letter to the state trial court and the course of pretrial negotiations, the state court was permitted to conclude that Ray failed to prove that there was a reasonable probability that he would have accepted the prosecutor's offer of 12 to 26 years.  Therefore, the Court must deny Ray's petition for a writ of habeas corpus.

Though the Court denies the writ, it will issue a certificate of appealability.  A denial of habeas relief may be appealed only if the petitioner obtains a certificate of appealability from the district or circuit court.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A certificate may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this burden by "demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). This is a close case upon which reasonable judges could disagree on the result.

Accordingly, a certificate shall issue on two specific questions: 1) in light of the record before it, whether the state court unreasonably applied *Strickland* and *Hill* in concluding that Ray suffered no prejudice from his counsel's deficient performance; and 2) whether Ray is barred from receiving an evidentiary hearing in federal court to develop the factual basis for his ineffective assistance claim.  *See* 28 U.S.C. § 2253(c)(3); *see also* Rule 11 of Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 ("If the court issues a certificate, the court must state the specific issues or issue that satisfy the showing required by 28 U.S.C. § 2253(c)(2).").

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

**IT IS FURTHER ORDERED THAT** a certificate of appealability **SHALL ISSUE** on the questions identified above.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 7, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 7, 2011, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager